IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.   ) | Case No. 2:23-cr-42 |
| ) | |
| DANTE WEBB, ) | |
| ) | |
| Defendant.  ) | |

**MEMORANDUM ORDER**

Pending before the Court is Defendant's motion for reconsideration (ECF 128) of the Court's November 9, 2023, order (ECF 56), which denied Defendant's motion to suppress (ECF 39). On careful review of the motion and associated exhibits, the government's response (ECF 152), Mr. Webb's reply (ECF 153), and the suppression-hearing record, the Court denies the motion for reconsideration, for three reasons.

First, the motion is untimely. The Court issued its suppression decision nine months ago. Yet, the motion for reconsideration was filed two days ago[1]—which was three business days before trial is scheduled to begin. Even if the Court were to re-open the suppression record, as Defendant requests, there is not enough time for that to happen and for the Court to issue a decision, absent delaying the trial.[2]

There was no reason for Mr. Webb to wait this long to file the motion for reconsideration, either. The bodycam footage, which forms the basis of the motion, has been in defense counsel's possession since the inception of the case. And while

---

[1] A bare-bones motion was filed on August 13, 2024 (ECF 128), but the Court did not receive the basis for the motion until the brief and exhibits were filed on August 14, 2024 (ECF 135; ECF 138).

[2] The parties and Court have been working diligently in preparation for trial. Further, given that the trial in this matter has already been delayed several times, including to accommodate the schedule of defense counsel, and given the nature of the charges here and the length of time the case has been pending, the Court does not find it to serve the ends of justice to continue the trial at this juncture.

Mr. Webb now has new counsel (his fourth attorney), new counsel has been on the case for five months, and could have filed the motion much earlier. The only reason given for the late filing by present defense counsel at the final pre-trial conference was that the issues just recently "coalesced." It's clear to the Court that what was meant by that was that as defense counsel was preparing impeachment material for trial, he came across additional suppression arguments. While the Court always strives to decide motions on the merits, the motion for reconsideration here is so untimely and prejudicial to the administration of justice that the Court must deny it on timeliness grounds. *See United States v. Kalb*, 891 F.3d 455, 467 (3d Cir. 2018) (affirming denial of reconsideration of suppression where the arguments could have been made much earlier in the proceedings); *see also United States v. Pride*, No. 16-68, 2021 WL 4340551, at *2 (W.D. Pa. Sept. 23, 2021) (denying motion to reconsider suppression decision where defense had access at the hearing to reports that formed the basis for "alleged discrepancies between the testimony of the law enforcement officers at the suppression hearings and various law enforcement reports").[3]

Second, relatedly, the motion is procedurally improper because it is an entirely new motion. That is, the government is correct when it argues that Mr. Webb's motion for reconsideration is really a new motion to suppress on entirely new grounds. ECF 152, p. 1. The initial motion to suppress as it pertained to the Millvale

---

[3] At the final pre-trial conference, defense counsel noted that Mr. Webb thought he was able to re-open the suppression hearing based on comments that the Court made to him at the November 9, 2023, hearing. Specifically, at the beginning of November hearing, the Court considered the issue of whether Mr. Webb and his counsel at the time had irreconcilable differences such that new counsel should be appointed. The Court placed that part of the proceeding under seal, given that it concerned attorney-client privileged information. The Court has reviewed the sealed portion of the transcript, and sees no mention of any ability for Mr. Webb to re-open the suppression hearing. To the contrary, Mr. Webb and his counsel agreed to proceed with the suppression hearing, and to then re-visit whether new counsel ought to be appointed at a later date.

Avenue search focused only on the issue of Ms. Shaughnessy's authority to allow the officers to enter the residence. ECF 29, pp. 4-6. The validity of the warrant wasn't at issue. Now, Mr. Webb takes aim at the warrant, by asserting that it contained false information and omitted other information, and without the correct information, there was no probable cause to support the warrant. This is a new motion.[4] To make it now, Mr. Webb must show good cause. Fed. R. Crim. P. 12(c)(3) ("If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely. But a court may consider the [motion] if the party shows good cause."). As noted above, he cannot, given that he could have made this motion over a year ago. *See Kalb*, 891 F.3d at 467. Further, as this Court previously found, simply obtaining new counsel does not serve as good cause. *United States v. Webb*, No. 23-42, 2024 WL 2134864, at *2 (W.D. Pa. May 13, 2024) (Ranjan, J.) (holding that the appointment of new counsel was not sufficient good cause to re-open the pretrial motions deadline); *see also United States v. Dabney*, 42 F.4th 984, 989 (8th Cir. 2022) (finding defendant did not establish good cause to file second suppression motion seven months after new counsel was appointed and less than two months before trial).

Third, even if the motion had been timely, it fails on the merits. The crux of Mr. Webb's motion is that Officer Ford's testimony during the suppression hearing was inconsistent with other statements he made, including on his body-cam and at a state-court hearing. Further, he argues that the false information was then

---

[4] In his reply, Mr. Webb points to passing statements in the Court's prior opinion on the suppression motion to suggest that the validity of the warrant was at issue. ECF 153, p. 2. As is clear from the legal analysis in the opinion, the issues of plain view and the validity of the warrant weren't the focus from the briefs, testimony, and the Court's opinion. The sole issue as to the Millvale Avenue search was the issue of Ms. Shaughnessy's authority to allow the search.

recklessly filtered through Officer Mosesso's probable-cause affidavit to obtain the warrant. Assuming that to be true,[5] that doesn't move the needle.

There is still no dispute that Officer Ford came for a domestic incident following a 911 call, and that when he arrived, he saw a firearm in plain view on the mantle. There is also no dispute that he smelled burnt marijuana in the residence. There is also no showing made to suggest that the statements by Ms. Shaughnessy to officers that are in the affidavit were false—*i.e.*, that Mr. Webb fled, that she told Officer Kolesar that the drugs and guns in the residence belonged to Mr. Webb, and that Ms. Shaughnessy pointed to a bag of guns that she said were Mr. Webb's. There is also no showing that the statements made by Officer Kolesar, which are included in the affidavit, were false—*i.e.*, that Officer Kolesar was able to see the guns in the bag in plain view.

In the end, a hearing is not needed, and reconsideration is not warranted. This is so because even if Mr. Webb is right and the Court were required to reformulate the affidavit of probable cause, that affidavit contained sufficient probable cause

---

[5] Notably, even assuming the facts to be true, Mr. Webb bumps into some legal obstacles in making his argument. Mr. Webb asks the Court to borrow from the employment-discrimination context (cat's paw) and impute the false statements by Officer Ford to the affiant, Officer Mosesso. But that's at odds with Third Circuit precedent. Officer Mosesso was entitled to rely on the reports of other officers who investigated the matter in formulating his affidavit, and that information is presumed to be reliable. *See United States v. Yusuf*, 461 F.3d 374, 385 (3d Cir. 2006) (finding that "information received from other law enforcement officials during the course of an investigation is generally presumed to be reliable"). Rather, Mr. Webb must show that there was something that should have put Officer Mosesso on reasonable notice that the responding officer's information was false and that further investigation was needed. *Id.* This is a difficult showing to make, especially where, as here, the initial investigation was rather straight-forward and non-complex—*i.e.*, responding to a domestic call, seeing something in plain view, and speaking to an occupant of the house.

separate from the challenged statements by Officer Ford to support a warrant to search for drugs and guns.[6]

For these reasons, the Court hereby **DENIES** the motion for reconsideration (ECF 128).

Dated: August 16, 2024                   BY THE COURT:

                                          /s/ J. Nicholas Ranjan
                                          United States District Judge

---

[6] This is not to suggest that Officer Ford's testimony at the suppression hearing was not credible. The Court has reviewed the body-cam footage and state-court testimony provided as exhibits, and sees no material inconsistencies. To be sure, there are snippets that are fodder for impeachment at trial, including as to the defense's likely arguments that the guns and drugs belonged to Ms. Shaughnessy, not Mr. Webb. But the excerpts are not shown in any context and so are not concrete enough for the Court to alter any of its prior findings, or really call into question the Court's first-hand observation of Officer Ford's testimony. If anything, the body-cam reinforces that Officer Ford was absolutely certain that he saw marijuana in plain view in the kitchen.