IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 2:23-cr-42 |
| | ) | |
| DANTE WEBB, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER

Before the Court are 28 motions *in limine* filed by Mr. Webb.  ECF 191, ECF 192, ECF 193, ECF 194, ECF 195, ECF 196, ECF 197, ECF 198, ECF 199, ECF 200, ECF 201, ECF 202, ECF 203, ECF 204, ECF 205, ECF 206, ECF 207, ECF 208, ECF 209, ECF 210, ECF 211, ECF 212, ECF 213, ECF 214, ECF 215, ECF 216, ECF 217, ECF 218.  The government also filed one motion *in limine*.  ECF 222.  The Court issues this omnibus order resolving the motions as follows.

**I.    Mr. Webb's motion *in limine* to preclude referring to Mr. Webb as "the Defendant" (ECF 191).**

Mr. Webb seeks to prohibit any reference to Mr. Webb as "the Defendant" and instead refer to him as "the Accused."  ECF 191.  Mr. Webb argues that while referring to him as "the Defendant" is "technically true," it has the potential to prejudice him and inflame the jury against him.  *Id.*  Mr. Webb proposes using the term "the Accused" instead.  *Id.*

The Court **DENIES** the motion.  "Defendant" is a common term that jurors will already know.  The Court will instruct the jury on Mr. Webb's presumption of innocence, which is sufficient to assuage Mr. Webb's concern.

## II.    Mr. Webb's motion *in limine* to preclude evidence of Mr. Webb's flight on June 7, 2022 (ECF 192).

Mr. Webb seeks to preclude the government from introducing evidence that Mr. Webb fled from officers on June 7, 2022, under Rules 105, 403, and 404(b).  ECF 192.  Mr. Webb argues that "there is an unfair danger of confusing the issue" as to whether Mr. Webb's flight on June 7, 2022, related to his actions on June 3, 2022.  *Id.* Mr. Webb proposes that the Court give a limiting instruction if the government is allowed to present evidence of Mr. Webb's flight.  *Id.*  On the other hand, the government argues that Mr. Webb's flight on June 7, 2022, is admissible as intrinsic evidence of Count Four because the flight occurred simultaneously as the acts giving rise to that count.  ECF 229, p. 4.  The government also argues that flight as evidence of consciousness of guilt is admissible under Rule 404(b) as to Counts One through Three related to conduct on June 3, 2022, because Mr. Webb knew that law enforcement had seized drugs and guns from his residence on that date.  *Id.* at pp. 6-7.

As to the evidence of Mr. Webb's flight on June 7, 2022, the Court agrees with the government that this conduct is intrinsic to Count Four and thus admissible. Intrinsic evidence is not subject to Rule 404(b).  *United States v. Green*, 617 F.3d 233, 245 (3d Cir. 2010).  "Intrinsic evidence is evidence that directly proves the charged offense, or that constitutes uncharged acts performed contemporaneously with the charged crime if they facilitate the commission of the charged crime."  *United States v. Savage*, 85 F.4th 102, 128-29 (3d Cir. 2023) (cleaned up), *cert. denied*, 144 S. Ct. 1020 (2024), *and cert. denied sub nom. Merritt v. United States*, 144 S. Ct. 1468 (2024);

*Green*, 617 F.3d 233, 248-49 (3d Cir. 2010). Count Four charges Mr. Webb with possession with intent to distribute controlled substances—evidence of Mr. Webb's flight is intrinsic evidence as to Count Four because his flight prolonged his possession of the controlled substances. *See United States v. Carothers*, No. 20-31, 2024 WL 4581643, at *6 (W.D. Pa. Oct. 25, 2024) (Gibson, J.) (holding that defendant's flight was intrinsic evidence because his flight prolonged defendant's possession of firearms).

Whether the evidence of Mr. Webb's flight on June 7, 2022, is admissible as evidence of consciousness of guilt as to Counts One through Three related to conduct on June 3, 2022, requires a balancing of the prejudice and probative value. The government concedes that evidence of Mr. Webb's flight as to Counts One through Three must be analyzed under Rule 404(b) because it is extrinsic evidence. ECF 229, p. 6.

"Admissibility under Rule 404(b) requires the satisfaction of four distinct steps: (1) the other-acts evidence must be proffered for a non-propensity purpose; (2) that evidence must be relevant to the identified non-propensity purpose; (3) its probative value must not be substantially outweighed by its potential for causing unfair prejudice to the defendant; and (4) if requested, the other-acts evidence must be accompanied by a limiting instruction." *United States v. Repak*, 852 F.3d 230, 241 (3d Cir. 2017). "Evidence of a defendant's flight is admissible to prove consciousness of guilt." *United States v. Thomas*, 322 F. App'x 177, 183 (3d Cir. 2009). And consciousness of guilt is a permitted non-propensity purpose under Rule 404(b).

*United States v. Arrington*, 530 F. App'x 143, 146 (3d Cir. 2013).

The government argues that evidence from Mr. Webb's iPhone establishes that he was in his residence the day after the June 3, 2022, seizure.  ECF 229, p. 6.  The government states that because Mr. Webb knew on June 7 that law enforcement had seized drugs and guns from his residence on June 3, the June 7 flight is admissible as evidence of consciousness of guilt of the June 3 Counts.  *Id.* at 6-7.  On balance, the Court finds that the June 7 flight is admissible as evidence of consciousness of guilt of the June 3 Counts, for the following reasons.

First, the evidence is offered for a non-propensity purpose (consciousness of guilt).  Second, evidence of flight is relevant to consciousness of guilt.  Third, the probative value of this evidence is not substantially outweighed by the potential of unfair prejudice under Rule 403.  It might be unduly prejudicial if the defendant didn't know that law enforcement was investigating him, or there was a long lag between the criminal conduct and the flight.  But, here, the government has pointed to evidence showing that Mr. Webb knew that the June 3 seizure occurred, and that the flight occurred four days after the June 3 seizure; thus, any prejudice here is less and does not substantially outweigh the probative value of the evidence of flight.  Fourth, the Court will include Third Circuit Model Jury Instruction 4.30, which will instruct the jury that while they may consider the evidence of flight as reflecting consciousness of guilt, they may also attribute the flight to some other reason.

Mr. Webb's motion is **DENIED**.

- 4 -

III. **Mr. Webb's motions *in limine* to preclude evidence of prior drug distributions (ECF 193), and to preclude witness from testifying that Mr. Webb's phones were "ringing off the hook" for drugs (ECF 210).**

Mr. Webb seeks to preclude the government from introducing testimony that a witness previously saw him sell drugs under Rules 105 and 404(b). ECF 193. Mr. Webb argues that the government should be required to identify the purpose of this testimony and if such testimony is permitted, it should not be admissible to show that Mr. Webb committed a crime on June 3. *Id.* Mr. Webb also seeks to preclude the government from eliciting testimony that Mr. Webb's phones were "ringing off the hook" with customers looking for drugs under Rules 403 and 404(b). ECF 210.[1] Mr. Webb argues that such evidence is unfairly prejudicial and impermissible other acts evidence. *Id.* If such testimony is allowed, Mr. Webb requests a Rule 105 limiting instruction informing the jurors that evidence of these alleged acts cannot be used to determine guilt or innocence. *Id.* As both of these motions deal with the admissibility of prior drug distributions, the Court will analyze them together.

The government first notes that it previously filed a notice of intent to introduce evidence of Mr. Webb's prior drug distributions at ECF 76. ECF 229, p. 7. The government argues that this evidence is admissible under Rule 404(b) for the non-propensity purpose of proving that Mr. Webb "knowingly possessed the controlled substances seized from his residence on June 3, 2022, and that he did so with the intent to distribute." *Id.*

---

[1] In the first trial, Ms. Shaughnessy testified that Mr. Webb "had two phones, most of them were ringing off the hook, all day. So he would ask me to answer the phones for him." It appears that this is the testimony that Mr. Webb seeks to preclude.

The Court finds that evidence of the prior drug distributions is admissible under Rule 404(b) for the following reasons. *Repak*, 852 F.3d at 241 (setting forth test for admissibility of evidence under Rule 404(b)). First, the evidence is being offered for the non-propensity purpose of establishing knowledge and/or intent. "Knowledge, intent, and lack of mistake or accident are well-established non-propensity purposes for admitting evidence of prior crimes or acts." *United States v. Givan*, 320 F.3d 452, 461 (3d Cir. 2003). Second, the evidence is relevant to the non-propensity purpose because "evidence of past distribution is relevant to prove intent to distribute in a later distribution trial, even to the extent of admitting prior convictions as well as uncharged conduct." *United States v. Jackson*, 619 F. App'x 189, 193 (3d Cir. 2015). Third, the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice under Rule 403. *United States v. Boxley*, No. 17-177, 2020 WL 3034831, at *6 (W.D. Pa. June 5, 2020) (Fischer, J.) (holding probative value of prior drug distribution conviction was not substantially outweighed by the danger of unfair prejudice because the evidence of prior distribution was "clearly relevant" to the charges of distribution at issue). Here, the evidence is highly relevant because it goes to Mr. Webb's knowing possession and his intent to distribute—testimony about a witness's purchase of drugs and testimony about a witness answering the phone for Mr. Webb's alleged drug customers go directly to knowledge and intent. Some of the prior distribution evidence also concerns similarly colored controlled substances and the same stamps on the controlled substances; that is therefore highly relevant as to Mr. Webb's knowledge,

- 6 -

intent, and *modus operandi*.  While the evidence is somewhat prejudicial, the danger of the prejudice does not substantially outweigh the highly probative value of this evidence.   Fourth, the Court will provide the appropriate limiting instruction regarding this evidence, as it did in the first trial, and that will further minimize any prejudice.  ECF 167, p. 12 ("You have heard testimony that Mr. Webb distributed drugs from the residence located at 246 S. Millvale Ave to Ms. Becky Shaughnessy and others.  This evidence of other acts was admitted only for a limited purpose. You may consider this evidence only for the purpose of deciding whether the defendant knowingly possessed with intent to distribute the controlled substances seized from the residence located at 246 S. Millvale Ave on June 3, 2022, as charged in Count One of the Indictment.").

Finally, as to the specific testimony or statement by Ms. Shaughnessy regarding the phones "ringing off the hook," the Court does not find this to be unduly prejudicial.   This testimony is relevant for the above reasons and this specific statement as to "ringing off the hook" is relevant to explain why Ms. Shaughnessy was tasked with answering the phones—*i.e.*, due to the frequency of so many calls.

Mr. Webb's motions are **DENIED**.

## IV.    Mr. Webb's motion *in limine* to preclude evidence that officers worked overtime on June 3, 2022 (ECF 194).

Mr. Webb seeks to preclude the government from introducing testimony that the officers responding to the June 3 incident were working overtime under Rules 402 and 403.  ECF 194.  Mr. Webb argues that this evidence is wasteful and unfairly prejudicial to Mr. Webb because it may cause the jury to believe that it is the fault of

people like Mr. Webb that officers need to work overtime. *Id.* The government argues that this evidence is relevant to combatting Mr. Webb's claims of collusion—*i.e.*, that several of the law enforcement officers conspired to frame Mr. Webb. ECF 229, pp. 9-10. The government explains that Detective Carly Wilson briefly testified at the first trial that she was working in Zone 5 on June 3, 2022, because she had picked up an overtime shift. *Id.* at 9. The government argues that this testimony is relevant to establishing that Detective Wilson did not regularly work with Officers Clarence Ford and Nicole Kolesar and only knew them from occasionally working overtime shifts in Zone 5. *Id.* at 9-10. The government further argues that this testimony is relevant because at the first trial, Mr. Webb "raised the specter of law enforcement collusion." *Id.* at 10.

The Court finds that this evidence is relevant under Rule 402 because it goes to why Detective Wilson was present at Mr. Webb's residence on June 3, 2022, and how she knew and interacted with the officers. As to Rule 403, while the probative value may be slim, the probative value is not substantially outweighed by the danger of unfair prejudice, nor is it wasteful because any perceived unfair prejudice is slight. The Court does not see this extremely limited testimony—to the extent that it even comes in—as raising the negative inference that Mr. Webb worries about. There is no risk of any prejudice.

Mr. Webb's motion is **DENIED**.

## V.  Mr. Webb's motion *in limine* to preclude evidence that Mr. Webb used someone else's backpack to carry guns and drugs (ECF 195).

Mr. Webb seeks to preclude the government from introducing testimony that

he used a witness's backpack to carry drugs and guns under Rules 402 and 403. ECF 195. Mr. Webb argues that the backpack was not found on his person, and that it did not contain drugs or guns when officers found it. He argues that evidence that he carried drugs or guns in someone else's backpack is irrelevant. *Id.*

The government argues that the evidence is admissible because: (1) the evidence shows that the backpack in question did contain guns on June 3, 2022, even if it did not contain drugs; (2) even though the backpack did not contain drugs, it is still relevant because it was seized from Mr. Webb's residence. ECF 229, pp. 10-11.

The Court agrees with the government. The objection here is more of a question of the weight of the evidence. It is certainly relevant evidence for a witness to testify that she owned the backpack, she let Mr. Webb use the backpack to store guns and drugs, and some of the guns in question were then found in that backpack (in a residence that Mr. Webb had just fled from). All of this goes to Mr. Webb's knowing possession of a firearm and knowing possession of a firearm in connection with a drug-trafficking crime. That drugs too weren't found in the backpack does not create any danger of confusion or substantial prejudice.

Mr. Webb's motion is **DENIED**.

## VI.    Mr. Webb's motion *in limine* to preclude evidence about witnesses' educational background.

Mr. Webb seeks to preclude the government from introducing testimony from witnesses about their educational background under Rules 402, 403, and 607. ECF 196. Mr. Webb argues that evidence of witness's education is not relevant unless the witness is an expert. *Id.* Mr. Webb also argues that testimony of educational

background buttresses credibility before cross-examination, specifically when the educational background connects to religion, as was elicited from a witness in the prior trial. *Id.* The government argues that testimony about witnesses' education is relevant background information that is relevant to their credibility. ECF 229, p. 12.

Evidence of a witness's education is relevant background information that can help the jury assess both the witness's perception and credibility. At the first trial, two witnesses testified that they attended a Catholic school, and Mr. Webb may be taking issue with that now. ECF 181, 29:17-18; ECF 182, 110:3-5. The government did not dwell on the religious nature of those schools at the first trial and has represented that it does not intend to do so at this trial. ECF 229, pp. 12-13. Because a witness's educational background is relevant to both credibility and perception, the testimony takes minimal time, and there is little risk of unfair prejudice, Mr. Webb's motion is **DENIED**.

## VII.  Mr. Webb's motion *in limine* to preclude evidence of witnesses' military background (ECF 197).

Mr. Webb seeks to preclude the government from eliciting testimony from witnesses as to their military background under Rules 402, 403, and 607. ECF 197. Mr. Webb argues that this type of testimony is irrelevant and buttresses credibility prior to cross-examination. *Id.* The government argues that this evidence is relevant to the witness's credibility and perception and will not waste time. ECF 229, p. 13. Because a witness's background, including military service, is relevant to both credibility and perception, the testimony takes minimal time, and there is little risk of unfair prejudice, Mr. Webb's motion is **DENIED**.

**VIII.  Mr. Webb's motion *in limine* to preclude testimony about witnesses as to their work experience in violence prevention, violent crimes, and gang units (ECF 198).**

Mr. Webb seeks to preclude the government from eliciting testimony from witnesses as to their work experience in units such as violence prevention, violent crimes, and gang cases under Rules 402, 403, 607.  ECF 198.  Mr. Webb argues that such testimony is irrelevant because this case does not involve evidence of violent crimes or gangs and is confusing and prejudicial.  *Id.*  Mr. Webb also argues that this type of testimony buttresses witness credibility before cross-examination.  *Id.* The government argues that information about law enforcement witnesses' experience in different units is relevant to their credibility and perception, and any of Mr. Webb's concerns can be addressed by Third Circuit Model Jury Instruction 4.18, which instructs that the testimony of law enforcement officers should not be given more or less weight simply due to their employment.  ECF 229, p. 13.

Because a witness's background, including work history, is relevant to both credibility and perception, the testimony takes minimal time, and there is little risk of unfair prejudice, Mr. Webb's motion is **DENIED**.

**IX.  Mr. Webb's motion *in limine* to preclude testimony about a piece of paper alleged to be an owe sheet (ECF 199).**

Mr. Webb seeks to preclude the government from eliciting testimony that the paper found with Mr. Webb on June 7 is an owe sheet under Rules 601 and 704(b). ECF 199.  Mr. Webb argues that the witnesses the government intends to produce do not have personal knowledge that the piece of paper is an owe sheet, and that any

expert opinion on whether the paper is an owe sheet would be providing an opinion on a condition of the elements of the June 7 count in violation of Rule 704(b). *Id.* The government argues that Rule 701 permits lay witness testimony that the paper is an owe sheet, and even if expert testimony were needed to render that opinion, such testimony would be allowable under Rule 704(b). ECF 229, p. 14.

The Court finds that the owe sheet testimony may not be introduced by a lay person, but may be introduced by the government's expert witness.

"Federal Rule of Evidence 701 permits a non-expert witness to offer her opinion to the jury if, and only if, her testimony is: '(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.'" *United States v. Fulton*, 837 F.3d 281, 291 (3d Cir. 2016) (quoting Fed. R. Evid. 701).

Significantly, the Third Circuit has held that lay witness testimony as to owe sheets is impermissible on at least one occasion. *United States v. Throckmorton*, 269 F. App'x 233, 235-36 (3d Cir. 2008) (holding that the district court should not have admitted lay testimony about owe sheets, but ultimately finding the district court's error was harmless).

The government proffers that lay witness, Detective Nathan Dettling, "has prior experience investigating drug trafficking crimes, to include participating in multiple wiretap investigations and partnering with federal, state, and local law enforcement . . . has seen owe sheets 'dozens of times'" and has first-hand knowledge

of Mr. Webb's residence and arrest, as Detective Dettling is the person that arrested Mr. Webb and seized the alleged owe sheet.  ECF 229, pp. 14-15.

The Court will not allow this testimony.  Allowing Detective Dettling to testify to offer his lay opinion as to whether the paper was an owe sheet would be inappropriate because his "testimony [would not be] limited to facts discovered during this particular investigation; instead, he [would bring] the wealth of his experience . . . to bear as he opined on the general format of an owe-sheet, which means he [would testify] as an expert." *Throckmorton*, 269 F. App'x at 236.

If Detective Dettling is not permitted to testify as to the alleged owe sheet, the government will call Supervisory Special Agent Karen Springmeyer to offer her expert opinion on whether the paper is an owe sheet.  ECF 229, p. 18.  The Court finds that this is permissible.

Courts frequently allow experts to opine on whether a piece of evidence is an owe sheet or a drug ledger.  *United States v. Mendoza*, 236 F. App'x 371, 381 (10th Cir. 2007); *United States v. Echeverri*, 982 F.2d 675, 680 (1st Cir. 1993) ("It follows that a trial court may allow a qualified expert to identify an otherwise inscrutable document as a drug ledger and explain its contents.") (collecting cases); *United States v. Jaramillo-Suarez*, 950 F.2d 1378, 1384 (9th Cir. 1991) ("The witness' testimony identifying the document as a pay/owe sheet provided specialized information to the jurors that was not readily known and that may have aided their understanding") *as amended on denial of reh'g* (Dec. 16, 1991).

"In a criminal case, an expert witness must not state an opinion about whether

- 13 -

the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense." Fed. R. Evid. 704(b). Experts may testify as to the *modus operandi* of individuals involved in drug trafficking without violating the prohibition set forth in Rule 704(b) because "such testimony is often helpful in assisting the trier of fact understand the evidence." *United States v. Womack*, 55 F.4th 219, 228-29 (3d Cir. 2022) (cleaned up) ("[i]t is only as to the last step in the inferential process – a conclusion as to the defendant's mental state – that Rule 704(b) commands the expert to be silent." (cleaned up), *cert. denied sub nom. Whitehead v. United States*, 144 S. Ct. 1012 (2024).

Allowing Supervisory Special Agent Springmeyer to offer an expert opinion on the alleged owe sheet is appropriate and would not violate Rule 704(b) because it would not be an opinion regarding an ultimate issue or Mr. Webb's mental state. Instead, Supervisory Special Agent Springmeyer's testimony as to the alleged owe sheet would be helpful in assisting the jury in understanding the evidence.

Mr. Webb's motion is **GRANTED IN PART AND DENIED IN PART**. Detective Dettling will not be permitted to offer his lay opinion on whether the evidence is an owe sheet, but Supervisory Special Agent Springmeyer will be permitted to offer her expert opinion on the subject.

## X. Mr. Webb's motion *in limine* to preclude reference to the Allegheny County Office of the Medical Examiner as "the County Crime Lab." (ECF 200).

Mr. Webb seeks to preclude the government from referring to the Allegheny County Office of the Medical Examiner as "The County Crime Lab" under Rules 403 and 611(a). ECF 200. Mr. Webb argues that referring to the Allegheny County Office

of the Medical Examiner as "the County Crime Lab" is prejudicial because it implies criminal activity. *Id.* Mr. Webb requests that the Allegheny County Office of the Medical Examiner be referred to by its proper name or an abbreviation such as "Office of the Medical Examiner" or "OME." *Id.* The government argues that referring to the Allegheny County Office of the Medical Examiner as "the County Crime Lab" is common shorthand used to refer to that office, as well as an accurate description of the function of the lab in investigating criminal activity through forensic analysis and other means. ECF 229, p. 19.

The Court finds that there is no danger of unfair prejudice of referring to the Allegheny County Office of the Medical Examiner and any such danger does not outweigh the relevance of being able to refer to the lab by its commonly used shorthand name.

Mr. Webb's motion is **DENIED**.

## XI. Mr. Webb's motion *in limine* to preclude testimony that an officer had multiple interactions with Mr. Webb prior to June 3, 2022 (ECF 201).

Mr. Webb seeks to preclude the government from eliciting testimony that an officer had multiple interactions with Mr. Webb prior to June 3, 2022, under Rules 403 and 404(b). ECF 201. Mr. Webb argues that this testimony is prejudicial because it implies that Mr. Webb is a repeat offender and is impermissible evidence of a prior act. *Id.* The government represents that it does not intend to "elicit the nature of the prior interactions nor the number of interactions." ECF 229, p. 20. Instead, the government only intends for Detective Dettling to identify Mr. Webb as the individual he arrested on June 7, 2022. *Id.*

Mr. Webb's motion is therefore **GRANTED**. Consistent with the government's representation, the government will not be permitted to elicit testimony about Detective Dettling's prior interactions with Mr. Webb before the June 7, 2022, arrest.

## XII.  Mr. Webb's motion *in limine* to preclude testimony regarding domestic violence (ECF 202).

Mr. Webb seeks to preclude the government from eliciting testimony from witnesses regarding domestic violence or the reason as to why officers were dispatched under Rules 403 and 404(b). ECF 202. Mr. Webb argues evidence of domestic violence is unfairly prejudicial and impermissible evidence of bad character under Fed. R. Evid. 404(b). *Id.* The government represents that it does not intend to elicit testimony from its witnesses regarding the reason for the call to the residence. ECF 229, pp. 20-21.

Mr. Webb's motion is **GRANTED IN PART AND DENIED IN PART**. Consistent with the first trial, it is permissible, relevant, natural, and inevitable that testimony will be elicited that the officers came to the scene based on a call involving a domestic incident. This limited testimony will be allowed, and the Court sees no way to avoid this limited testimony from being introduced. Any specifics as to the allegations of the domestic incident are not relevant, and will not be allowed.

If it becomes necessary, either party may suggest an appropriate jury instruction instructing the jury that they may not consider domestic violence issues in considering Mr. Webb's guilt.

## XIII.  Mr. Webb's motion *in limine* to preclude evidence that drug dealers use firearms as self-help (ECF 203).

Mr. Webb seeks to preclude the government from introducing evidence that

implies that drug dealers use firearms as self-help in criminal activity since they cannot turn to the police under Rules 402 and 403.  ECF 203.  Mr. Webb argues that this implication is irrelevant because there is no evidence of self-help or violence in this case and the implication risks painting Mr. Webb as violent, which would be prejudicial.  *Id.*  The government argues that this evidence is relevant because drug traffickers routinely use firearms for protection due to the nature of drug trafficking.  ECF 229, pp. 21-24.

The Third Circuit has recognized that possession of firearms is "highly probative" of drug trafficking activity and "the type of protection" drug traffickers need to protect their operations.  *Womack*, 55 F.4th at 235; *see also United States v. Mainor*, 393 F. App'x 10, 19 (3d Cir. 2010) (recognizing that possessing a gun can provide a "dealer, his stash, or his territory with protection." (quoting *United States v. Duran*, 407 F.3d 828, 840 (7th Cir. 2005)).  Firearms are also considered "tools of the trade" for drug traffickers.  *United States v. Becerra*, 97 F.3d 669, 672 (2d Cir. 1996).  The government has identified a litany of cases that support the admission of this type of evidence.  ECF 229, pp. 22-23 (collecting cases).

The Court finds that this evidence is highly probative and its probative value is not outweighed by the danger of unfair prejudice because not only does it tend to show that Mr. Webb possessed "tools of the trade," but also is relevant, admissible evidence for Count Two, which charges Mr. Webb with the possession of a firearm in furtherance of a drug trafficking crime.

Mr. Webb's motion is **DENIED**.

**XIV.  Mr. Webb's motion *in limine* to preclude government from referring to firearms as "ghost guns" (ECF 204).**

Mr. Webb seeks to preclude the government from referring to firearms in evidence as "ghost guns" under Rule 403.  ECF 204.  Mr. Webb argues that this term is a "frightening colloquialism" that is unfairly prejudicial and designed to inflame the jury.  *Id.*  The government argues that evidence related to the "ghost guns" is relevant to Counts One and Two because its expert will testify that these types of guns are favored by drug traffickers due to their untraceable nature.  ECF 229, p. 25. The government also argues that this evidence is relevant because the type of weapon is one piece of evidence the Third Circuit has identified in *United States v. Sparrow* as relevant to whether the defendant possessed the gun in furtherance of a drug trafficking crime.  371 F.3d 851, 853 (3d Cir. 2004), *as amended* (Aug. 3, 2004).  The government identified one out-of-circuit case in which the district court prohibited the government from referencing the term "ghost guns" and describing the gun parts as "untraceable or unserialized" during trial.  *United States v. Montanez*, No. 23-186, 2024 WL 4607479, at *3 (E.D.N.Y. Oct. 29, 2024).  However, that case dealt with a single charge of possession of ammunition, and the court's reasoning was based in part on the fact that evidence of ghost guns did not directly relate to that charge.  *Id.* at *3.

Ultimately, the Court finds that the use of the shorthand term "ghost gun" is not unduly prejudicial.  It is simply a more common way for law enforcement to describe an untraceable gun, and whether a gun is referred to at trial as a "ghost gun" rather than "untraceable" is not a material difference such that it would create any

undue prejudice.[2]  Mr. Webb's motion is **DENIED**.

**XV.    Mr. Webb's motions *in limine* to preclude references to high-caliber ammunition (ECF 205), preclude references to fully automatic guns (ECF 206), and preclude testimony that a seized firearm was an AK (ECF 208).**

These three motions by Mr. Webb address similar issues so the Court will analyze them together.   Mr. Webb makes the following arguments regarding references to certain types of ammunition and firearms.  First, Mr. Webb seeks to preclude the government from eliciting testimony that some guns recovered in Webb's residence used high-caliber ammunition under Rule 403.  ECF 205.  Mr. Webb argues that "referring to a high-caliber weapon is unfairly prejudicial to" him.  *Id.*  Second, Mr. Webb seeks to preclude the government from eliciting testimony that some guns recovered were fully automatic under Fed. R. Evid. 403.  ECF 206.  Mr. Webb argues that because "nothing about this case involves guns being used or fired or violence" referring to the guns as "fully automatic" is unfairly prejudicial to Mr. Webb.  *Id.* Third, Mr. Webb seeks to preclude the government from eliciting testimony from witnesses who will refer to certain guns as "AKs" under Rules 402 and 403.  ECF 208. Mr. Webb argues that referring to a gun as an AK is unfairly prejudicial because AKs

---

[2] The Court would note that overly restricting word choice by witnesses through motion-*in-limine* practice can result in not only unnatural witness testimony, but create unnecessary traps for lawyers and witnesses.  For example, if a witness slips up by accidentally using a turn of phrase that the Court excluded, then it would require limiting instructions that could result in even more confusion to the jury and which could, in fact, emphasize a concern that the jury never even considered to begin with.  Some of Mr. Webb's motions *in limine*—like this one and the one pertaining to using the term "accused" rather than "defendant"—are examples of this concern.  This isn't to say that some terms or words cannot be excluded under Rule 403—but the prejudice has to be truly undue.

have "extremely negative connotations in modern society" and "are the weapon of choice for terrorists." *Id.*

The government argues that this evidence is relevant to determining whether Mr. Webb possessed firearms in furtherance of drug trafficking as it relates to Count Two, which charges Mr. Webb with a violation of 18 U.S.C. § 924(c). ECF 229, pp. 27-28.

Under Section 924(c), the government must prove that Mr. Webb's possession of a firearm "actually furthered the drug trafficking offense." *Sparrow*, 371 F.3d at 853. As stated above, one of the factors the Third Circuit has recognized as relevant in determining whether a defendant has possessed a firearm in furtherance of a drug trafficking crime is the type of the weapon. *Id.*

Courts have held that evidence related to the automatic or semi-automatic nature of a firearm and whether a firearm uses high caliber ammunition to be relevant to whether the firearm was used "in furtherance" of a drug trafficking crime. *See, e.g.*, *United States v. Arzola*, 361 F. App'x 309, 312 (3d Cir. 2009) (semi-automatic firearm); *United States v. Holley*, 831 F.3d 322, 330 (5th Cir. 2016) ("large caliber" and semi-automatic nature of firearm could lead jury to conclude that defendant used it to protect his drug manufacturing operation). And at least one court has held that an "AK-style" firearm can be relevant to a drug charge. *United States v. Williams*, No. 14-153, 2016 WL 6600144, at *2 (E.D. La. Nov. 8, 2016) (finding that "AK-style rifle" was relevant to a charged drug conspiracy because it was found in the same room and in close proximity to the drugs).

- 20 -

The Court finds that this evidence is highly relevant. The caliber and semi-automatic features of the guns are important factors to tie the guns to the drug-trafficking activity. Examining the evidence under Rule 403, the Court finds that the probative value is not substantially outweighed by the danger of unfair prejudice. The Court sees no basis to suggest that use of the term "AK" connotes terrorism, and otherwise cannot discern any prejudice that would be undue here.

Mr. Webb's motion is **DENIED**.

## XVI. Mr. Webb's motion *in limine* to preclude testimony about gummy sticky residue (ECF 207).

Mr. Webb argues that the government should be precluded from eliciting testimony that items in evidence "had a gummy, sticky residue on them" because evidence of a "gummy, sticky glue residue on a gun" is not relevant under Rule 402. ECF 207. The government proffers that this evidence, in conjunction with other evidence, is relevant to the chain of custody and Mr. Webb's possession of the firearm. ECF 229, pp. 30-31. The government states that photographs from Mr. Webb's phone show a sticky residue and the physical firearm the government's firearm expert tested also has a sticky residue on the slide. *Id.* The Court finds this evidence to be relevant in context of the other evidence identified by the government, and important for chain-of-custody purposes.

Mr. Webb's motion is **DENIED**.

## XVII. Mr. Webb's motion *in limine* to preclude testimony about stamp bag markings (ECF 209).

Mr. Webb seeks to preclude the government from eliciting testimony from a lay witness about why a stamp bag of heroin may have a certain logo as compared to

a different stamp bag under Rule 702.  ECF 209.  Mr. Webb argues that testimony "as to reasons why a drug dealer may put a certain logo on a stamp bag of heroin" is not proper for a lay witness.  *Id.*  The government argues that this testimony does not require an expert because the testimony is based on the witness's personal observations and knowledge as a drug user and if the Court does not consider it to be fact testimony, it is still admissible as a lay opinion under Rule 701.  ECF 229, pp. 31-32.

At the first trial, the cohabitant of Mr. Webb's residence testified that, at the time of the June 3, 2022, seizure, she was a drug user.  ECF 181, 36:11-13.  The cohabitant also testified that she is "familiar with the type of language used to order certain drugs" including heroin.  *Id.* at 36:16-25.  The cohabitant also testified to her personal knowledge about what a stamp bag was and why a drug dealer would use different types of stamps, including testifying that she knew what the stamps looked like because she "had done them personally" and knew what stamps drug users preferred.  *Id.* at 37:5-39:11.

The Court is satisfied that this witness's testimony is based on her personal knowledge under Rule 602.  The witness testified about her background as a drug user and her personal knowledge of why she or other drug users may prefer drugs that carry a certain stamp.  This testimony is factual and thus the Court need not address whether it is admissible as a lay opinion under Rule 701.

Mr. Webb's motion is **DENIED**.

**XVIII.    Mr. Webb's motion *in limine* to preclude testimony from Detective Pizzuto regarding the Cellebrite program (ECF 211).**

Mr. Webb seeks to preclude the government from eliciting testimony from Detective Pizzuto regarding the Cellebrite program under Fed. R. Evid. 607 and 702. ECF 211. Mr. Webb argues that Detective Pizzuto is not an expert in Cellebrite forensics and was previously unable to testify as to how Cellebrite translates a cell phone download. *Id.* Mr. Webb argues that Detective Pizzuto is a lay witness, not an expert, and to call him an expert in front of the jury is misleading. *Id.*

The government's position is that Detective Pizzuto's "testimony is more akin to lay witness testimony than expert testimony" and the government is happy to offer Detective Pizzuto as a lay witness rather than an expert. ECF 229, p. 33.

In the first trial, after a sidebar discussing the issue, the Court clarified to the jury that Detective Pizzuto was not providing testimony as an expert and only providing testimony "as to his personal involvement and role in what he did in this case." ECF 180, 69:18-70:2.

Because the government has agreed to present Detective Pizzuto as a lay witness rather than an expert, Mr. Webb's motion is **GRANTED**. Detective Pizzuto may provide the same lay testimony he provided during the first trial to lay a foundation for the Cellebrite translations.

**XIX. Mr. Webb's motions *in limine* to preclude testimony about specialized knowledge of controlled drug buys (ECF 212); to preclude testimony about specialized knowledge of drug imports (ECF 213); to preclude testimony about specialized knowledge of undercover drug buys (ECF 215); and to preclude testimony about specialized knowledge of wiretaps (ECF 216).**

Mr. Webb filed several motions *in limine* related to Supervisory Special Agent

Karen Springmeyer, and the Court will analyze them together.  First, Mr. Webb seeks to preclude the government from eliciting testimony from an expert witness about that witness's specialized knowledge related to controlled drug buys under Rules 402, 403, and 607.  ECF 212.  Mr. Webb argues that this evidence is irrelevant and would waste time because no controlled buy occurred in this case.  *Id.*  Mr. Webb also argues that this testimony would buttress credibility prior to cross examination.  *Id.*  Second, Mr. Webb seeks to preclude the government from eliciting testimony from an expert witness about that witness's specialized knowledge related to drug imports under Rules 402, 403, and 607.  ECF 213.  Mr. Webb argues that this evidence would waste time and be unfairly prejudicial because "it stokes passions about illegal immigration and the border crisis."  *Id.*  Mr. Webb also argues that this testimony would buttress credibility prior to cross examination.  *Id.*  Third, Mr. Webb seeks to preclude the government from eliciting testimony from an expert witness about that witness's specialized knowledge related to undercover drug buys under Rules 402, 403, and 607.  ECF 215.  Mr. Webb argues that this evidence would waste time and that this testimony would buttress credibility prior to cross examination.  *Id.*  Fourth, Mr. Webb seeks to preclude the government from eliciting testimony from an expert witness about that witness's specialized knowledge related to wiretaps under Fed. R. Evid. 402, 403, and 607.  ECF 216.  Mr. Webb argues that this evidence would waste time and buttress credibility prior to cross examination.  *Id.*

The government argues that this evidence goes to Supervisory Special Agent Springmeyer's qualifications, is not unfairly prejudicial, and will not waste time.

ECF 229, p. 34.[3]

At the first trial, the government sought to have Supervisory Special Agent Springmeyer testify as an expert in drug trafficking and the use of firearms in furtherance of drug trafficking. In doing so, the government introduced testimony from Supervisory Special Agent Springmeyer that she had experience with and specialized knowledge of controlled drug buys (ECF 180, 95:11-96:7), drug imports (*id.* at 99:13-20), undercover drug buys (*id.* at 94:17-95:10), and wiretap investigations (*id.* at 93:21-94:16). After hearing this testimony, and other testimony about Supervisory Special Agent Springmeyer's specialized knowledge and experience, the Court qualified her as an expert. *Id.* at 101:1-2. Mr. Webb did not object and did not request voir dire. *Id.* at 100:23-25.

It is undisputed that an expert witness may offer opinions if she is "qualified as an expert by knowledge, skill, experience, training, or education[.]" Fed. R. Evid. 702. Here, Supervisory Special Agent Springmeyer's testimony about controlled drug buys, drug imports, undercover drug buys, and wiretap investigations is highly relevant to her qualifications as an expert in the field of drug trafficking and the use

---

[3] The government noted in its response to these motions that the defense may attempt to challenge Supervisory Special Agent Springmeyer's status as an expert in the fields of drug trafficking and the use of firearms in furtherance of drug trafficking, and outlines its argument regarding the admissibility of Supervisory Special Agent Springmeyer's expert testimony under Rule 702. The Court notes that Mr. Webb has not filed a *Daubert* motion challenging Supervisory Special Agent Springmeyer's expert testimony, and any such motion or attempt to exclude Supervisory Special Agent Springmeyer's expert testimony at this late juncture is likely waived. If Mr. Webb is seeking to challenge this witness's credentials, counsel must raise this issue at the final pre-trial conference.

of firearms in furtherance of drug trafficking. Supervisory Special Agent Springmeyer did not testify that any of those types of transactions or investigations occurred in this case—instead, she was providing the jury and the Court with the necessary information to qualify her as an expert in this field. That her expertise and qualifications are broader than the scope of her testimony is not reason to strike these aspects of her testimony. Any danger of unfair prejudice as to this evidence does not substantially outweigh the highly probative value of the evidence as it relates to Supervisory Special Agent Springmeyer's qualifications.

Mr. Webb's motion is **DENIED**.

## XX. Mr. Webb's motion *in limine* to preclude testimony outside the scope of Karen Springmeyer's report (ECF 214).

Mr. Webb seeks to preclude the government from eliciting testimony from Karen Springmeyer that is outside the scope of her report. ECF 214.

The government argues that Mr. Webb's position is inconsistent with Fed. R. Crim. P. 16(a)(1)(G) and Mr. Webb is on notice of Supervisory Special Agent Springmeyer's testimony because her testimony at this trial will be substantially the same as her testimony at the last trial so Mr. Webb cannot claim that he is surprised by her testimony. ECF 229, pp. 41-43.

Rule 16(a)(1)(G)(iii) requires the government to disclose, at the defendant's request, a complete statement of all of an expert's opinions and the bases and reasons for them. Fed. R. Crim. P. 16(a)(1)(G)(iii). While the rule "requires a complete statement of all opinions the expert will provide," it "does not require a verbatim recitation of the testimony the expert will give at trial." Fed. R. Crim. P. 16 (Notes of

Advisory Committee on Rules—2022 Amendment). The purpose of Rule 16(a)(1)(G) is to prevent surprise to defendants and provide them with an opportunity to test the expert through cross-examination. *United States v. Mitchell*, No. 09-105, 2013 WL 12202563, at *1 (W.D. Pa. Oct. 7, 2013) (Cercone, J.).

Because Supervisory Special Agent Springmeyer testified extensively at the first trial, Mr. Webb is on notice of the opinions she intends to present. Mr. Webb did not identify any testimony at the first trial that was outside the scope of her report. *See* ECF 214. Experts may testify as to "logical and reasonable inference[s]" that follow from their report. *United States v. Barrett*, 117 F. App'x 216, 219 (3d Cir. 2004). Additionally, even if the government's disclosures under Rule 16(a)(1)(G) were inadequate, in situations where an expert has testified at previous proceedings in a case, there "can be no argument" that the defendant is caught off guard and is not able to sufficiently prepare for cross-examination. *United States v. Hatch*, 514 F.3d 145, 165 (1st Cir. 2008).

Mr. Webb's motion is **DENIED**.

## XXI. Mr. Webb's motion *in limine* to preclude testimony that analyzing the drugs took a long time (ECF 217).

Mr. Webb seeks to preclude the government from eliciting testimony from Emily Wilkinson that she counted seized drugs by hand and that analyzing the drugs took a long time under Rule 403. ECF 217. Mr. Webb argues that this testimony is unfairly prejudicial because it elicits sympathy from the jury as to how arduous Ms. Wilkinson's job was in this case. *Id.*

The government argues that this testimony relates to the number of doses

seized at Mr. Webb's residence and is highly probative of Mr. Webb's intent to distribute.  ECF 229, pp. 43-44.

"Possession of large amounts of drugs permits an inference of intent to distribute." *United States v. Forrest*, 434 F. Supp. 1131, 1134 (E.D. Pa. 1977), *aff'd*, 573 F.2d 1302 (3d Cir. 1978).  Here, Ms. Wilkinson's testimony about how long it took her to hand-count and analyze the drugs at issue is highly probative of Mr. Webb's intent to distribute because it shows that Mr. Webb possessed a high quantity of drugs.  This probative value is not substantially outweighed by the danger of unfair prejudice because it goes directly to an element at issue in the case.  The testimony is also relevant to Ms. Wilkinson's reliability and credibility.

Mr. Webb's motion is **DENIED**.

## XXII. Mr. Webb's motion *in limine* to preclude evidence of colored crack cocaine (ECF 218).

Mr. Webb seeks to preclude the government from introducing evidence of colored crack cocaine under Rule 104(b).  ECF 218.  Mr. Webb argues that because trial testimony indicated that the crack cocaine was green, and that lab reports indicated that one substance was blue and another blue-pink, there should be a hearing on the chain of custody of the crack cocaine in evidence.  *Id.*

The government argues that it has presented sufficient evidence to establish the chain of custody and any remaining questions are for the jury to resolve.  ECF 229, pp. 44-45.

Rule 104(c) states that a court must conduct a hearing on a preliminary question outside the presence of the jury if: "(1) the hearing involves the admissibility

of a confession; (2) a defendant in a criminal case is a witness and so requests; or (3) justice so requires." Here, the only applicable subsection is (c)(3) because there is no confession at issue and Mr. Webb is not a witness.

"To establish a chain of custody sufficient to make evidence admissible, the proponent need only prove a rational basis from which to conclude that the evidence is what the party claims it to be." *United States v. Rawlins*, 606 F.3d 73, 82 (3d Cir. 2010) (cleaned up). This is not a heavy burden, and the evidence may be admitted even "if a complete and exclusive chain of custody" has not been established. *United States v. Talley*, 826 F. App'x 158, 162 (3d Cir. 2020) (finding government had met the burden because an officer testified that the handguns admitted at trial were the same ones he found in the defendant's apartment).

Here, the government has proffered sufficient evidence to meet its burden on the chain of custody. The government produced testimony at the first trial about the seizure of the crack, the staging of evidence, including the crack, for transportation, the staging of evidence, including the crack, at the station, and the receipt and processing of the crack at the lab. ECF 229, p. 46. The government has also indicated that it plans to introduce additional testimony about the chain of custody during the second trial. *Id.* While the chain of custody is not perfect, as evidenced by the unfilled envelopes that Mr. Webb references in his motion, based on the evidence, a rational basis exists to conclude that the crack is what the government claims it to be, and "gaps in the chain go to the weight of the evidence, not its admissibility." *Rawlins*, 606 F.3d 73 at 83.

Based on this, there is no basis for a hearing on this issue. Mr. Webb's motion is **DENIED**.

**XXIII.** **The government's motion *in limine* to preclude references to suppression issues before the jury (ECF 222).**

The government argues that at the first trial, defense counsel improperly questioned witnesses about issues related to the legality of searches that were already decided at the suppression stage. ECF 222, pp. 1-2. The government seeks an order precluding this type of questioning and proposes a curative jury instruction should the defense breach any such order. *See* ECF 222.

Mr. Webb argues that he is not attempting to re-litigate suppression issues, but instead seeks to impeach witnesses and inquire into their character for truthfulness. ECF 227. Mr. Webb also objects to the government's proposed jury instruction and proposes one of his own. *Id.* at 11.

It is well settled that suppression issues are for the court, not the jury. *Steel v. United States*, 267 U.S. 505, 511 (1925). However, defendants are permitted to cross-examine a witness regarding their credibility and truthfulness. *United States v. Irizarry*, 341 F.3d 273, 312 (3d Cir. 2003); *United States v. Wade*, 451 F. App'x 173, 179-80 (3d Cir. 2011). Case law on this issue reflects the thorny nature of questioning by the defense when the questioning could arguably relate to both suppression and a witness's credibility. For example, in *United States v. Mastin*, the Eleventh Circuit found that the district court did not violate the defendant's Sixth Amendment right by limiting cross-examination of law enforcement officers. *United States v. Mastin*, 972 F.3d 1230, 1240 (11th Cir. 2020). The defendant in that case argued that the

district court erred in not allowing him to cross-examine witnesses "on topics such as whether law enforcement obtained a search warrant" because such questioning went to the witnesses' character for truthfulness. *Id.* at 1239. In considering the issue, the Court stated that such questioning "would have had little bearing on the main testifying officer's credibility or supposed biases, prejudices or ulterior motives." *Id.* at 1240. Instead, the questions would have tended to confuse the issues before the jury. *Id.*

The Eleventh Circuit examined the issue again in *United States v. Ordaz*, where the district court limited a defendant's questions on cross-examination that went to the issue of probable cause. No. 21-13423, 2024 WL 471966, *4 (11th Cir. Feb. 7, 2024). The court held that the defendant's argument that the questioning was to test the witness's credibility was waived. *Id.* at *5. However, the court went on to say that even if the issue hadn't been waived, the defendant was not entitled to "unlimited inquiry"—and that the jury was able to adequately weigh the witness's credibility "given his other testimony on cross-examination about the ultimate traffic stop, the number of officers participating in that stop, the search of [the defendant's] car and the collection of evidence, and the report [the witness] wrote about the stop and the evidence seized." *Id.* The Third Circuit came to a similar conclusion analyzing a district court's ruling on the government's objection to a question about the legality of a vehicle search. *United States v. Wade*, 451 F. App'x 173, 179 (3d Cir. 2011). The court held that the district court's limitation was proper, and noted that defense counsel continued to question the witness and "sought to challenge [the

witness's] credibility in great detail and at length." *Id.*

In the prior trial, the Court stated that it was "fair" to question the witness about what he was doing on the scene. ECF 180, 169:11-16. The Court noted that an argument that the witness did not have the appropriate authority to search or violated the law or the Constitution while searching would be inappropriate. *Id.* at 169:17-170-4. The Court issued the following jury instruction while instructing the jury at the close of evidence: "You heard testimony about officers conducting certain searches or obtaining warrants to search or arrest. Whether officers had the legal authority to conduct any searches or arrests is irrelevant, and you must not consider this issue." ECF 162, p. 14.

Here, questions on cross-examination going to the credibility and truthfulness of witnesses are appropriate. However, defense counsel should be careful not to veer into territory that would suggest to the jury that they should consider whether the search was legal. Any concerns by the government are better suited for specific objections to specific questions during trial. If necessary, the Court will include the same jury instruction about officers' legal authority to search in its final jury instructions.

The government's motion is **DENIED**.

******************

Dated: November 25, 2024                    BY THE COURT:

                                            /s/ J. Nicholas Ranjan
                                            J. Nicholas Ranjan
                                            United States District Judge

- 32 -